# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 19, 2010 Session

## ROBERT A. STOLZE v. JANET F. STOLZE

**Appeal from the Chancery Court for Rutherford County**
**No. 08-1704DR      Don R. Ash, Chancellor**

———————————

**No. M2010-00818-COA-R3-CV - Filed April 5, 2011**

———————————

In this divorce action, Husband appeals trial court's award of alimony to Wife, grounds for divorce, and overall division of marital assets. Finding that the trial court did not abuse its discretion in the nature or amount of alimony awarded, grounds for divorce, or the overall division of marital assets, the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Ben Hall McFarlin, III, Murfreesboro, Tennessee, for the appellant, Robert A. Stolze.

Andrew M. Cate, Nashville, Tennessee, for the appellee, Janet F. Stolze.

## OPINION

## I. Facts and Procedural History

Janet F. Stolze ("Wife") and Robert A. Stolze ("Husband") were married in April 1987. Husband served in the Navy from the time of marriage until 1994, when he took a job with FedEx. He began by "throwing boxes" and later received a position as a pilot; in 2007, he was promoted to captain. In 1997, after working in various jobs, Wife became a stay-at-home mother and reared the parties' two children. In 2003, she acquired a real estate license and took a part-time job working as a real estate broker.[1]

During the course of their twenty-two year marriage, Husband engaged in three extramarital relationships. When Wife learned of two of these relationships, the parties

_____

[1] At various times since 2003, Wife worked as a seasonal employee for Best Buy, as a housecleaner with Dana's Maid Service, and as a substitute teacher. Her income from those jobs is not clear from the record.

sought counseling and attempted to reconcile. In 2008, Husband began conducting the third extramarital relationship, which Wife also discovered. On November 21, 2008, Wife filed for divorce, alleging inappropriate marital conduct. Husband answered and filed a counter-complaint, alleging irreconcilable differences.

During the pendency of the divorce, Husband paid $1,500 to Wife each month beginning in January 2009.[2] Two weeks before trial, the parties attended mediation, as a result of which they agreed to a permanent parenting plan and stipulated to the value and division of various items of marital and separate property.[3] A trial was held on September 3, 2009.

At the conclusion of the trial, the court granted the divorce on the grounds of Husband's inappropriate marital conduct. It also adopted the parties' permanent parenting plan in accordance with an agreement reached at mediation. In making the division of property, the court relied upon the values and partial division of property set forth in their stipulation. However, not all matters were covered in the stipulation, and the court addressed specific provisions with regard to the sale of the marital home; ordered the parties to file a joint tax return for 2009 and divide the refund equally; ordered that Husband's retirement accounts be divided equally; awarded all bank accounts in their own name to the respective party; ordered Husband to pay Wife $4,500 immediately to equalize the value of the bank accounts; and awarded certain personal and household property to each party.

The court further ordered Husband to pay rehabilitative alimony to Wife over the course of ninety-six months. With respect to alimony, the Final Decree of Divorce stated as follows:

> **ALIMONY** - Husband should be required to pay Wife rehabilitative alimony as provided under T.C.A. § 36-5-121(e) and as Ordered below, based upon a consideration of the factors set forth in T.C.A. § 36-5-121(i), the applicable

---

[2] It appears that neither party sought to have this payment designated as *pendente lite* alimony nor was Husband required by the court to make the payment.

[3] The parties stipulated: 1) that the marital home would be sold and the proceeds applied to the first and second mortgage, the balance of which would then be applied by the court as part of the property division; 2) that if it was not necessary to sell the hot tub and washer and dryer with the home, Wife would take sole possession of those items; 3) that Husband's FedEx 401(k) retirement account would be divided equally between the parties; 4) to the value of four vehicles, all of the parties' marital and separate bank accounts, a credit card balance, the 529 accounts of minor children, and the purchase price and loan balance for a rental property, of which Wife's marital portion was $15,000; 5) that a 2005 Chevrolet Suburban and 2005 Chrysler Sebring would be awarded to Wife and a 2003 Chevrolet Silverado and 2006 Honda Civic Coupe to Husband; 6) that the minor children's college fund would remain for their benefit only and no monies could be withdrawn or used without the agreement of both parties; and 7) to the award of certain separate property to each party.

case law and the facts relevant to the factors and case law, as established by the proof presented. The relevant facts established in the record and considered by the Court include, but are not limited to:

a. Husband's earning capacity is substantially higher than Wife's earning capacity;

b. Husband's education and training during the marriage is significant. Wife was primarily a stay-at-home mother during the marriage and her training and education is limited;

c. The parties' marriage of 22 years, is a longer duration marriage;

d. Both parties seem to be in good mental and physical health;

e. Wife remained at home to attend to the needs of the parties' children, while Husband developed his career;

f. The property division in this matter provides for a substantially equal split;

g. The parties enjoyed a nice standard of living during their marriage;

h. Husband is the party at fault, or at least the party with the greater fault, and Wife is awarded the divorce based upon Husband's inappropriate marital conduct; and

i. Wife is an economically disadvantaged spouse and Husband has the financial ability to pay support.

. . .

**IT IS, FURTHER, ORDERED AND ADJUGED** that Husband shall pay rehabilitative alimony to Wife for a period of ninety-six (96) months. For the first sixty (60) consecutive months, Husband shall pay rehabilitative alimony to Wife in the amount of Three Thousand Dollars ($3,000.00) per month. Commencing with Husband's sixty-first (61st) monthly payment to Wife, the amount of Husband's monthly rehabilitative alimony obligation to Wife shall be reduced to Two Thousand Dollars ($2,000.00) per month, which Husband shall pay for an additional period of thirty-six (36) consecutive months. As long as Wife maintains exclusive possession of the marital residence and Husband is paying the monthly debt on the marital residence, Husband shall be credited the sum of One Thousand Dollars ($1,000.00) per month from the debt payment, toward his monthly alimony obligation to Wife.

The parties were ordered to pay their own attorney's fees, and Husband was ordered to pay all court costs. Husband appeals and contests the trial courts award of alimony, grounds for divorce, and overall division of assets.

## II. Standard of Review

We review a trial court's findings of fact *de novo* with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). We review

questions of law *de novo* with no presumption of correctness. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001).

## III. Analysis

### A. Alimony

Husband's central dispute on appeal is the trial court's award of rehabilitative alimony to Wife. Specifically, Husband contends that the evidence of Wife's needs does not support the amount of alimony awarded by the trial court.

Tennessee Code Annotated § 36-5-121(i) lists a number of nonexclusive factors for a court to consider when determining whether to make an award of alimony.[4] The court must consider all of the relevant factors under the circumstances, but the court's chief consideration should be the need of the disadvantaged spouse seeking support, followed by the ability of the obligor spouse to pay support. *Riggs v. Riggs*, 250 S.W.3d 453, 457 (Tenn.

---

[4] Tenn. Code Ann. § 36-5-121(i) instructs the court to consider all relevant factors in determining whether spousal support is appropriate and in determining the nature, amount, length, and manner or payment, including the following:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in § 36-4-121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121.

Ct. App. 2007) (citing *Robertson v. Robertson,* 76 S.W.3d 337, 342 (Tenn. 2002)); *see also Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001); *Oakes v. Oakes*, 235 S.W.3d 152, 160 (Tenn. Ct. App. 2007).

When the trial court has set forth its factual findings in the record, we will presume the correctness of those findings so long as the evidence does not preponderate against them. Tenn. R. App. P. 13(d); *Bogan*, 60 S.W.3d at 727; *Crabtree v. Crabtree*, 16 S.W.3d 356, 360 (Tenn. 2000). Trial courts have broad discretion to determine whether spousal support is needed and, if so, its nature, amount, and duration. *Broadbent v. Broadbent*, 211 S.W.3d 216, 220, (Tenn. 2006); *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004). This Court gives wide latitude to the trial courts in making an alimony decision and is generally disinclined to interfere unless the facts clearly require that we do so. *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. Ct. App. 1986); *Lancaster v. Lancaster*, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984).

As noted above, the trial court, in the Final Decree of Divorce, discussed and carefully applied the factors at Tenn. Code Ann. § 36-5-121(i). Our review of the trial transcript reveals that the court specifically addressed the Wife's needs and the Husband's ability to pay. With respect to Wife's needs, the court stated as follows:

> [T]he amount of alimony should be determined so that the party obtaining the divorce is not left in a worse financial situation than she had before the opposite party's misconduct on or about the divorce. . . . And while the alimony is not intended to provide the former spouse with relative financial ease, it should be given in such a way or awarded in such a way to approach equity.
> . . .
> Rehabilitative alimony is designed to temporarily support the disadvantaged spouse for an amount of time for which it takes to rehabilitate herself. . . .
> I've got to show an economically disadvantaged spouse, which I do have. . . .

With respect to Husband's ability to pay, the trial court stated, "I'm going to find specifically that this gentleman does have adequate funds to provide support." The court also considered the relative earning capacity of the parties and determined that "obviously the husband here makes substantially more than the wife."[5]

---

[5] From 2003 to 2008, Husband reported the following wages, salaries, and tips on his tax returns: $107,809 (2003), $124,909 (2004), $142,830 (2005), $186,910 (2006), $245,149 (2007), and $222,814 (2008). From January to August 15, 2009, Husband's gross income was $150,113; however, Husband testified that because of the downturn in the economy, he was scheduled to return to his former position as
(continued...)

In making the decision to award rehabilitative alimony, the trial court considered Wife's educational history and her present working situation. The court stated:

> And ma'am, the purpose of [the rehabilitative alimony] is based upon what you said, is that you cannot work and go to school and raise your children. So the reason I'm saying that amount is that you'll have an opportunity to go back to school and get a further - and to try to raise your pay level. Now I can't order you go back to school but that provides you enough income to do that.

We have reviewed the record, and the evidence does not preponderate against the trial court's factual findings. Moreover, we are unable to conclude that the trial court abused its discretion in the amount or duration of rehabilitative alimony awarded to Wife. The court considered the duration of the twenty-two year marriage and correctly determined that Wife was economically disadvantaged. The court did not award Wife *alimony in futuro*, as she requested, nor did it accept Wife's proposed list of monthly expenses wholesale.[6] Rather, the trial court conducted an independent analysis using the factors at Tenn. Code Ann. § 36-5-121(i) and made an award of rehabilitative alimony consistent with the legislative preference expressed at Tenn. Code Ann. § 36-5-121(d)(2).[7] Therefore, we affirm the trial court's award of rehabilitative alimony in all respects.

---

[5](...continued)
a First Officer on June 17, 2010 which would diminish his salary.

[6] On September 3, 2009, Wife filed a Statement in Compliance with Rule 12.02 which listed Wife's estimated monthly expenses at $7,479.32 after the sale of the marital residence. With respect to Wife's proposed monthly expenses, the trial court stated, "[T]o be quite honest, ma'am, a lot of these expenses on here I think are excessive, and so I'm not going to be able to help you in exactly the way you want me to."

[7] The legislature has expressed its preference for an award of rehabilitative alimony in Tenn. Code Ann. § 36-5-121(d)(2) which states as follows:

> It is the intent of the general assembly that a spouse, who is economically disadvantaged relative to the other spouse, be rehabilitated, whenever possible, by the granting of an order for payment of rehabilitative alimony. To be rehabilitated means to achieve, with reasonable effort, an earning capacity that will permit the economically disadvantaged spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

**B. Grounds for Divorce**

Husband contends that the trial court abused its discretion in awarding Wife a divorce on the basis of Husband's inappropriate marital conduct under Tenn. Code Ann. § 36-4-101(11)."[8]

Our review of the record shows that Husband not only admitted "that he is guilty of adultery pursuant to [Tenn. Code Ann.] § 36-4-101(3)" in his Answer to Wife's Complaint for Divorce, but the proof at trial confirms his admission. Husband also testified that he put "profiles on a couple of internet dating sites" and that he was currently in a relationship with the woman with whom he had his most recent affair. In light of these admissions, we cannot say that the evidence preponderates against the trial court's findings. Thus, we affirm the grounds for divorce articulated by the trial court.

**C. Property Division**

Husband raises an alternative argument requesting this Court to consider whether the trial court erred in its "overall equitable division of assets, pursuant to [Tenn. Code Ann.] § 36-4-121." Specifically, Husband argues the division of property based upon the values assigned by the court is not "equitable." Husband's argument in this regard appears to be premised on his contention that the $1,500 per month he paid Wife through the pendency of the divorce should "be treated as alimony payments" and he be given "credit for his continued support." This contention is without merit.

As an initial matter, Husband failed to include in his brief the chart setting forth the court's property division as required by Rule 7 of the Rules of the Court of Appeals.[9] As a result, we are unable to discern the total value of the parties' property that was subject to division. Moreover, to the extent Husband relies upon the $1,500 monthly payment to Wife

---

[8] Tenn. Code Ann. § 36-4-101(a)(11) reads as follows: "The husband or wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper, which may also be referred to in pleadings as inappropriate marital conduct."

[9] Pursuant to Rule 7, a party who "takes issue" with a trial court's division of property in a domestic relations appeal must attach a chart displaying the property values proposed by both parties, the value assigned by the trial court, and the party to whom the trial court awarded the property. Rule 7 also requires that "[e]ach entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found . . . ." This Court has previously held that "where an appellant fails to comply with [Rule 7], that appellant waives all such issues relating to the rule's requirements." *Stock v. Stock*, No. W2005-02634-COA-R3-CV, 2006 WL 3804420, at *5 n.3 (Tenn. Ct. App. Dec. 28, 2006) (quoting *Howell v. Howell*, No. W2001-01167-COA-R3-CV, 2002 WL 190537, at *4 (Tenn. Ct. App. Aug. 15, 2002)). We are under no duty to "search a trial court record in order to discern the valuation of the couple's property." *Slaughter v. Slaughter*, No. W2007-01488-COA-R3-CV, 2008 WL 1970491, at *2 (Tenn. Ct. App. May 8, 2008) (citing *Durant v. Durant*, No. M2001-00691-COA-R3-CV, 2002 WL 772923, at *3 (Tenn. Ct. App. Apr. 30, 2002)).

during the pendency of the divorce proceeding as evidence that the final division of property was inequitable, we note that the record does not contain an order requiring Husband to pay either child support or alimony *pendente lite*. Whether a spouse has made or accepted voluntary payments during the pendency of a proceeding is not one of the specific factors at Tenn. Code Ann. § 36-4-121(c) to be taken into account by the trial court in making an equitable division of marital property and we presume, in the absence of evidence to the contrary, that the trial court properly considered all pertinent matters.

### D. Attorneys Fees

Wife requests that she be awarded attorney's fees and costs incurred in the defense of this appeal. Tenn. Code Ann. § 27-1-122 allows this Court to make an award of fees upon a determination that the appeal was "frivolous or taken solely for delay." In light of the issues presented and the record, this appeal is not frivolous within the contemplation of Tenn. Code Ann. § 27-1-122. *See Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001) (citing *Bursack v. Wilson*, 982 S.W.2d 341, 345 (Tenn. Ct. App. 1998) ("An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success.").

## IV. Conclusion

For the foregoing reasons, the judgment of the trial court is AFFIRMED. Costs of this appeal are assessed against Robert A. Stolze.


_____
RICHARD H. DINKINS, JUDGE